FILED

2006 Jun-13  PM 02:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

REGINALD MCDANIEL,       }
       }
   **Plaintiff,**       }
       }     **Case No.: 04-CV-3307-VEH**
      **v.**       }
       }
JO ANNE B. BARNHART,       }
COMMISSIONER,       }
SOCIAL SECURITY       }
ADMINISTRATION       }
       }
   **Defendant.**       }

## OPINION

This Court has before it the January 23, 2006 motion of Defendant JoAnne Barnhart, Commissioner of Social Security Administration ("Defendant") for summary judgment as to Plaintiff Reginald McDaniel's race discrimination claim based on disparate treatment in promotions (Doc. 6).    For the reasons set forth below, the Defendant's motion for summary judgment is due to be **Granted** as to Plaintiff's race discrimination claim based on disparate treatment in promotions under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq. and 42 U.S.C. §1983.

1

## I.  Procedural History

Plaintiff Reginald McDaniel commenced this action on November 29, 2004, by filing a complaint in this Court alleging that his former employer violated his rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. §1983 by failing to promote him as a result of race discrimination.[1]

On January 23, 2006, the Defendant filed a motion for summary judgment asserting: (1) that Plaintiff cannot maintain an action under 42 U.S.C. §1983 because, as a federal employee, Plaintiff McDaniel's exclusive cause of action lies under Title VII at 42 U.S.C. §2000e-16; and (2)  that Plaintiff McDaniel has failed to present substantive evidence that the Defendant's proferred legitimate, non-discriminatory, and non-retaliatory reasons are pretextual or are motivated by discrimination.

The Defendant has submitted evidence[2]  in support of its motion for

---

[1] In Plaintiff McDaniel's complaint, it appears that he inadvertently listed 42 U.S.C. § 1981 in paragraph one as the statute he is bringing this action under.  However, in paragraphs fourteen through fifteen he cites 42 U.S.C.  § 1983 as count one of his complaint.  The Defendant moves for summary judgment as to 42 U.S.C. §1983.  The Court's opinion addresses Plaintiff's race discrimination claims as presented in his complaint under count one and count two.  Therefore, the Court addresses Plaintiff's claims as violations of 42 U.S.C. §1983 and Title VII of the Civil Rights Act of 1964.

[2] The Defendant submitted the depositions of Plaintiff McDaniel and Charles Wofford. The Defendant submitted affidavits of Charles Wofford, Ellen Hall, Leon Rhodes, and Robin

summary judgment and filed a supporting brief on January 23, 2006.  On February

23, 2006, the Plaintiff filed a brief in opposition to the Defendant's motion for

summary judgment.  The Defendant filed a reply brief on February 27, 2006.

## II.  Standard of Review

### A.  Summary Judgment

Under Federal Rule of Civil Procedure 56 (c), summary judgment is proper

"if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law."

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229

F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always

bears the initial responsibility of informing the court of the basis for its motion and

identifying those portions of the pleadings or filings which it believes demonstrate

the absence of a genuine issue of material fact.  Celotex Corp., 477 U.S. at 323.

Once the moving party has met his burden, Rule 56(e) requires the nonmoving

party to go beyond the pleadings and by his own affidavits, or by the depositions,

answers to interrogatories, and admissions of file, designate specific facts showing

---

McCorkle.  The Defendant also submitted the vacancy announcement, Plaintiff McDaniel's
application for the position, the employee profile well qualified list, the well qualified candidate
list, selectee's (Mr. Murphree's) application for position, and the administrative record.

that there is a genuine issue for trial.  Id. at 324.

The substantive law will identify which facts are material and which are irrelevant.  Chapman, 229 F.3d at 1023; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  Chapman, 229 F.3d at 1023; Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248; Chapman, 229 F.3d at 1023.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Anderson, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  Fitzpatrick, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to

4

produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial. The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. Fitzpatrick, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion

at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  <u>Lewis v. Casey</u>, 518 U.S. 343, 358 (1996) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)).

### III.  Relevant Facts[3]

A "Vacancy Announcement" was posted which advised of the vacancy for the General Manager position at issue, described the position, identified the qualification requirements of potential applicants, and set forth the criteria to be used in evaluating applicants for purposes of creating a list of the "best qualified" applicants to be sent to the selecting official for final selection. (DEX 1, Vacancy Announcement).[4]  The Social Security Administration's Alabama Area Director, Charles Wofford (white), was the selecting official for the position at issue. (DEX 2, Wofford affidavit; DEX 3, Wofford depo., pgs. 7 - 10).

Plaintiff submitted an application for the position.  (See DEX 4)  Sixteen applicants were deemed "best qualified" for the position, and their names were

---

[3] Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the facts are presented in the light most favorable to the Plaintiff.  Facts are undisputed unless otherwise expressly noted. See <u>Fitzpatrick</u>, 2 F.3d at 1115.

[4] Defendant's Exhibits 1, 2, 4, 5, 6, 8, 9, 10, and 11 are part of the Administrative Record in this case. While the entire Administrative Record has been submitted as DEX 12, portions of that record were set forth as separate exhibits for convenience.

placed on a best qualified  list[5] which was sent to the selecting official, Mr. Wofford. (See DEX 5, Employee Profile Well Qualified List;[6] DEX 6, Well-Qualified Candidate List[7]).  Plaintiff was one of the 16 individuals placed on the best qualified list sent to Mr. Wofford.  (DEX 5; DEX 6; DEX 7, Plaintiff's depo., pg. 16, lns. 14-18 and pg. 18, lns. 9-11).   At the time Plaintiff submitted his application, he was a GS-13 level District Manager in Aiken, South Carolina (DEX 4), where his direct supervisor was Jessie Varnado-White (black), and his second level supervisor was Leon Rhodes (black) (DEX 7, Plaintiff's depo., pg. 2, lns. 9-25; DEX 8, Rhodes affidavit).   Leon Rhodes was the Area Director in South Carolina (DEX 7, Plaintiff's depo., pg. 22, lns. 1-3; DEX 8, Rhodes affidavit). Upon receiving the best qualified list of applicants, Mr. Wofford reviewed the applications and spoke with each applicant's second line supervisors regarding the applicant's qualifications. (DEX 3, Wofford depo., pgs. 10, 47-75, and 80-83). Regarding Mr. Wofford's contact with the various applicants' supervisors, Mr. Wofford testified it was his usual practice to speak with the supervisor who was the

---

[5] The terms "best qualified list " and "well qualified list" were used during the selection process synonymously. (See DEX 5).

[6] This partially redacted document is part of the Administrative Record and shows the race of the 16 individuals on the best qualified list.

[7] This partially redacted document is the actual list sent to the selecting official and on which the selecting official identified his selection, Jeff Murphree.

Area Director over the applicant in question.[8] (DEX 3, Wofford depo., pg. 14, ln. 13 - Pg.15, ln. 11, and pg. 79).

Mr. Rhodes confirmed that it was customary for selecting officials to contact Area Directors regarding district manager vacancies. (DEX 8, Rhodes affidavit). Recommendations from supervisors are usually made as either "not recommended," "recommended," or "highly recommended." (DEX 3, Wofford depo., pg. 84, ln. 22 - pg. 85, ln. 2). Mr. Wofford spoke to Leon Rhodes about the Plaintiff's qualifications for the position at issue. (DEX 2, Wofford affidavit; DEX 3, Wofford depo., pg. 79). Mr. Rhodes did not "highly recommend" Plaintiff for the position at issue. (DEX 8, Rhodes affidavit; DEX 2, Wofford affidavit; DEX 3, Wofford depo., pgs. 83-85). Mr. Rhodes advised Mr. Wofford that the Aiken, South Carolina office, where Plaintiff was the District Manager, was not among the top performing offices in South Carolina. (Id). Mr. Rhodes advised Mr. Wofford that, while Plaintiff's performance was good, he [Mr. Rhodes] "did not feel that the results from [Plaintiff's] overall performance was such that he could highly recommend him [for the position at issue];" that Plaintiff's office "was not among the top performing offices in South Carolina;" and that there had been "workload

---

[8] Mr. Wofford explained that some applicants held positions other than a GS-13 District Manager position and did not have an Area Director in their supervisory chain. (DEX 3, Wofford depo., pg. 80, ln. 4 - pg. 81, ln. 3). He obviously could not talk to an Area Director regarding those applicants.

control problems in [that] office that led to complaints from the public and from Congressional offices." (DEX 8, Rhodes affidavit). Ellen Hall, Mr. Rhodes's Area Administrative Assistant, also advised Mr. Wofford that there were performance issues in the Aiken, South Carolina, office and that there had not been much improvement while Plaintiff was the District Manager of that office. (DEX 9, Hall affidavit).

Mr. Wofford did not select Plaintiff for the position at issue and instead selected Jeff Murphree. (DEX 2, Wofford affidavit). At the time Mr. Murphree submitted his application, Mr. Murphree was a GS-13 District Manager in Richmond, Kentucky (DEX 10, Murphree application; DEX 3, Wofford depo., pg. 85), where his direct supervisor was Jo Ellen Jones, and his second level supervisor was Robin McCorkle. (DEX 3, Wofford depo., pgs. 70 and 86; DEX 10, Murphree application). Robin McCorkle was the Area Director in Kentucky. (DEX 3, Wofford depo., pg. 86). Prior to the selection, Mr. Wofford spoke with Ms. McCorkle about Mr. Murphree's qualifications. (DEX 3, Wofford depo., pg. 86; DEX 11, McCorkle affidavit). During her discussion with Mr. Wofford, Ms. McCorkle "highly recommended" Mr. Murphree for the position and advised Mr. Wofford that, although Mr. Murphree had inherited an office [as Richmond, Ky. District Manager] with several problems, he had made great progress in turning

9

that office around. (DEX 11, McCorkle affidavit; DEX 3 Wofford depo., pgs. 86-87).  Ms. McCorkle also advised that Mr. Murphree had "great people skills and his employees spoke very highly of him." (Id.)

Mr. Wofford explained he selected Mr. Murphree over Plaintiff due to the fact that Plaintiff's Area Director, Mr. Rhodes, had not highly recommended Plaintiff for the position. (DEX 2, Wofford affidavit; DEX 3, Wofford depo., pg. 88, lns. 14-20).  Mr. Wofford stated that, prior to the selection, he had worked with Mr. Murphree in the past and his performance had been outstanding. (DEX 3, Wofford depo., pg. 88, ln. 21 - pg. 90, ln. 10).  Mr. Wofford had also received good reports about Mr. Murphree from Tommy Morris, the Area Director in Georgia, when Mr. Murphree worked there on assignment. (DEX 3, Wofford depo., pg. 33, ln. 4 - pg. 34, ln. 3).  Although, Mr. Wofford testified he did not consider race at all in making his selection, Mr. Wofford admitted that during the selection process he made notes in which he noted each applicant's race stating he "needed the information ...because that's the way I do business." (DEX 3, Wofford depo., pg. 47-73, 90.).

Mr. Wofford testified that, from the information contained in their respective applications, the qualifications of the selectee and the Plaintiff are "fairly equal." (DEX 3, Wofford depo., pg. 87, ln. 20 - pg. 88, ln 13).  Plaintiff McDaniel disputes

that his and Mr. Murphree's qualifications were the same.  Plaintiff McDaniel had a law degree while Mr. Murphree did not.  Id. At 37.  Plaintiff McDaniel had 17 awards compared to 11 for Mr. Murphree.  DEX 4, 10, 12.  Plaintiff was initially employed by the Social Security Administration in July, 1990 and the Mr. Murphree in July, 1991. (See DEX 4, pg. 0031; DEX 10, pg. 0169).  Mr. McDaniel had seven years of management experience with the agency compared to only one for Mr. Murphree.  DEX 4, 10.  Both the Plaintiff and the selectee were District Managers, GS-13 level, at the time they submitted their applications. (DEX 4, pg. 0027; DEX 10, pg. 0155).  At the time of the selection, Plaintiff had been a GS-13 District Manager in South Carolina for approximately three years compared to the selectee's having been a GS-13 District Manager in Kentucky for approximately one year. (Id).  In addition to the District Manager position in Kentucky, the selectee had also completed the Atlanta Management Development Program where, during the course of one year, he had been given four developmental assignments at the GS-13 level, including: the assistant manager's position at Birmingham East; the Area Administrative Assistant position reporting to Mr. Wofford; the District Manager's job at Warner Robbins, Georgia; and, District Manager in Bessemer, Alabama. (DEX 3, Wofford depo., pg. 31, ln. 7 - pg. 35, ln. 23; DEX 10, pgs. 0157 - 0164, and 0172-0175).  Prior to the selection, the selectee had worked directly for

Mr. Wofford for several years and had done an outstanding job.[9] (DEX 3, Wofford depo., pgs. 89 - 90; see also, DEX 7, Plaintiff's depo., pg. 48, lns. 1 - 3). Prior to the selection at issue, Plaintiff had never worked directly for, or in the same office with, Mr. Wofford. (DEX 7, Plaintiff's depo., pg. 47, lns. 16 - 25).

## IV.  Applicable Substantive Law and Analysis

### 42 U.S.C. §1983[10]

Plaintiff alleges a disparate treatment claim in promotions based on race under 42 U.S.C. §1983.  As a federal employee, Plaintiff's exclusive remedy is under Title VII, at 42 U.S.C. § 2000e-16, and he cannot state a claim under 42 U.S.C. § 1983. Brown v. General Services Administration, 425 U.S. 820 (1976). The precisely drawn provisions of Title VII applicable to federal employees preempt claims under general civil rights statutes.  Brown, 425 U.S. at 834.  As a result, Title VII preempts other legal theories, including 42 U.S.C. § 1983. Brown, 425 at 835; Canino v. United States EEOC, 707 F.2d 468, 471 (11th Cir. 1983). Accordingly, the Defendant's motion for summary judgment as to Plaintiff's claims under 42 U.S.C. §1983 is due to be granted.

---

[9] As previously stated, the selectee was a district manager in Kentucky at the time of the selection at issue and worked under Mr. Rhodes. It was prior to that position as District Manager in Kentucky that the selectee worked under Mr. Wofford's supervision.

[10] The Court's analysis in this section would also be applicable to 42 U.S.C. §1981.

**Title VII**

The Plaintiff asserts that direct evidence of discrimination exists in the actions of the selecting official Wofford who made notes regarding the race of Plaintiff McDaniel and the selectee during the selection process, along with his testimony that "I just needed the information...because that's the way I do business."  The Defendant asserts that Wofford's notes are not direct evidence of race discrimination in promotions.

This Court defines direct evidence of discrimination as "evidence which reflects 'a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.' " Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. ,2004)(quoting Carter v. Three Springs Residential Treatment, 132 F.3d 635, 641 (11th Cir.1998)).  Direct evidence is "evidence, that, if believed, proves [the] existence of [a] fact without inference or presumption." Burrell v. Bd. of Trs. of Ga. Military Coll., 125 F.3d 1390, 1393 (11th Cir.1997).

> As our precedent illustrates, "only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of" some impermissible factor constitute direct evidence of discrimination. Rojas v. Florida, 285 F.3d 1339, 1342 n. 2 (11th Cir.2002) (quoting Schoenfeld, 168 F.3d at 1266) (citations and quotations omitted); See Carter v. City of Miami, 870 F.2d 578, 582 (11th Cir.1989). If the alleged statement suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence. See Burrell, 125 F.3d at 1393.  One example of direct evidence would be a management memorandum saying, "Fire Earley–he is too old." But the evidence at

issue here, at most, *suggests* discrimination, leaving the trier of fact to *infer* discrimination based on the evidence; by definition then, the evidence is circumstantial.

Earley v. Champion Intern. Corp. 907 F.2d 1077 (1990), 1081 -1082 (C.A.11 (Ala.),1990) (quoting Rollins v. TechSouth, Inc., 833 F.2d 1525, 1529 (11th Cir.1987)).

The Court finds that Wofford's notes regarding the race of Plaintiff McDaniel and the selectee during the selection process does not amount to direct evidence. Wofford's notes regarding the race of Plaintiff McDaniel and the selectee is not evidence that, if believed, proves the existence of race discrimination in promotions without an inference or a presumption. Accordingly, the Court finds that Plaintiff McDaniel has not presented direct evidence of discrimination based on Wofford's making notes regarding the race of Plaintiff McDaniel and the selectee during the selection process. "When a plaintiff has direct evidence of illegal discrimination, he need not make use of the McDonnell Douglas presumption, and conversely, when he does not have such direct evidence, he is required to rely on the McDonnell Douglas presumption." Wright v. Southland Corp. 187 F.3d 1287, 1293 (11th Cir. 1999); See also, Bogle v. Orange County Bd. of County Comm'rs, 162 F.3d 653, 656 (11th Cir.1998); Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1331 (11th Cir.1998); see also Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121, 105

S.Ct. 613, 621-22, 83 L.Ed.2d 523 (1985).

Relying on the <u>McDonnell Douglas</u> framework, Plaintiff McDaniel must establish a prima facie case of race discrimination by showing that: (1) he is a member of a protected class; (2) he suffered an adverse job action; (3) his employer treated similarly-situated employees outside his protected class more favorably; and (4) he was qualified to do the job.  <u>See</u>  <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. at 802; <u>Holifield v. Reno</u>, 115 F.3d  1555, 1562 (11th Cir. 1997) (citations omitted); and <u>Coutu v. Martin Cty. Bd. of Cty. Commissioners</u>, 47 F.3d 1068, 1073 (11th Cir.1995).

Plaintiff is a member of a protected class; he is Black.  Plaintiff McDaniel suffered an adverse job action when he was not promoted to the District Manager, GS-105-14 position in the Gadsden office of the Social Security Administration. Mr. Murphree, a similarly-situated employee outside Plaintiff McDaniel's protected class was treated more favorably than Plaintiff McDaniel; he was selected for the position.  Plaintiff McDaniel was qualified for the position.  Therefore, Plaintiff McDaniel has established a prima facie case of race discrimination.

If Plaintiff establishes a prima facie case, the burden shifts to the Defendant to articulate a legitimate, non-discriminatory reason for the employment action. <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981).   The

Defendant's burden in articulating a legitimate, non-discriminatory reason for her actions is exceedingly light.  Id.; see also Meeks v. Computer Assoc. Int'l, 15 F.3d 1013 (11th Cir. 1994).  The selecting official, Charles Wofford, explained that, in making his selection for the position at issue, he reviewed the applications submitted by each of the  applicants, and spoke with supervisors of each applicant regarding the applicant's qualifications for the position. As Area Director for Alabama, Mr. Wofford testified it was his usual practice to speak with the Area Director in the applicant's supervisory chain regarding the applicant's qualifications.  Regarding the Plaintiff, Mr. Wofford spoke with Leon Rhodes, Area Director for South Carolina, regarding the Plaintiff's qualifications. As Area Director for South Carolina, Mr. Rhodes was Plaintiff's second level supervisor. Mr. Rhodes, who is the same race as Plaintiff, told Mr. Wofford that he could not highly recommend Plaintiff for the Gadsden position because the office Plaintiff managed was "not among the top performing offices in South Carolina" and that there had been "workload control problems in [that] office that led to complaints from the public and from Congressional offices."

Mr. Rhodes's Administrative Assistant, Ellen Hall, testified she also spoke with Mr. Wofford, and that she advised him that there had been performance issues at the office managed by Plaintiff.

16

Mr. Wofford testified he selected Jeff Murphree after he received an excellent recommendation from Robin McCorkle regarding Mr. Murphree. Ms. McCorkle was the Area Director in Kentucky and was Mr. Murphree's second line supervisor. Ms. McCorkle highly recommended Mr. Murphree for the position and praised the work he had done in Kentucky.

Mr. Wofford testified the primary reason the Plaintiff was not selected over Mr. Murphree was due to the fact Mr. Rhodes had not highly recommended the Plaintiff for the position.  In addition, Mr. Wofford noted he had worked with Mr. Murphree in the past and that Mr. Murphree had done an outstanding job.  Also, Mr. Wofford was aware the Area Director in Georgia had praised Mr. Murphree for work done there on assignment.

Plaintiff McDaniel asserts that the Court can infer discrimination because Mr. Murphree's qualifications were significantly inferior as compared to Plaintiff McDaniel's qualifications.  Plaintiff relies on the Supreme Court's holding in Patterson v. McLean Credit Union, 491 U.S. 164 (1989) that qualifications evidence may suffice to show pretext.  A plaintiff "might seek to demonstrate that respondent's claim to have promoted a better qualified candidate was pretextual by showing that she was in fact better qualified than the person chose for the position." Id. at 187-188.  In the Defendant's brief, the Defendant asserts that, regardless of

who is in fact most qualified, Plaintiff has to advance an extremely strong showing of a disparity in qualifications in order for an inference of discrimination to rise. (Def. Brief p.16).  The Defendant relies on <u>Cofield v. Goldkist</u>, 267 F.3d. 1264 (11th Cir. 2001) (quoting <u>Denny v. City of Albany</u>, 247 F.3d 1172, 1187 (11th Cir. 2001) that "disparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparaties are so apparent as virtually to jump off the page and slap you in the face." <u>See also</u>, <u>Lee v. GTE Florida, Inc.</u>, 226 F.3d 1249, 1254 (11th Cir. 2000).

Plaintiff McDaniel correctly points out that the Supreme Court's recent decision in <u>Ash v. Tyson Foods, Inc.</u>, 126 S.Ct. 1195 (2006) strikes down certain Eleventh Circuit language in describing the test for pretext in qualification cases. In <u>Ash v. Tyson</u>, the Supreme Court evaluated the Eleventh Circuit's standard in discrimination cases where a plaintiff is attempting to demonstrate pretext by comparing relative qualifications for a particular job. <u>Ash</u>, 126 S.Ct. At 1197;<u>see also</u> <u>Drakeford v. Alabama Cooperative Extension System, et al</u>., No. CIV.A.3:03-CV-1201-WHA, 2006 WL 871139 (M.D. Ala. April 6, 2006).  The Court found fault stating, "[t]he visual image of words jumping off the page to slap you (presumably a court) in the face is unhelpful and imprecise as an elaboration of the standard inferring pretext from superior qualifications." <u>Id</u>.  The Court was clear

that it was not attempting to "define more precisely what standard should govern pretext claims based on superior qualifications," rather the Court instructed the Eleventh Circuit to use "some formulation other than the [slap you in the face test]" in order to "better ensure that trial courts reach consistent results." Id. at 1198. However, the Court noted examples of more favorable language from an Eleventh Circuit case:

> Federal courts, including the Court of Appeals for the Eleventh Circuit... have articulated various other standards, see e.g, Cooper [ v. Southern Co, 390 F.3d 695, 732 (11th Cir. 2004)](noting that "disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chose the candidate selected over the plaintiff for the job in question." (internal quotation marks omitted)); Raad v. Fairbanks North Star Borough School Dist., 323 F.3d 1185, 1194 (9th cir. 2003)(holding that qualifications evidence standing alone may establish pretext where the plaintiff's qualifications are "clearly superior" to those of the selected job applicant); Aka v. Washington Hospital Center, 156 F.3d 1284, 1294(D.C.Cir. 1998) (en banc) (concluding the fact finder may infer pretext if "a reasonable employer would have found the plaintiff significantly better qualified for the job.")...

Id. at 1197-98.  Plaintiff McDaniel asserts that "in determining whether pretext exists, the court should look to whether the employer applies its selection practices equally." Gilchrist v. Bolger, 733 F.2d 1551 (11th Cir. 1984).  The Plaintiff asserts that the Defendant failed to apply its selection practices equally because, according to Wofford, "the best way to know an applicant's performance is to observe them

first hand if you have a chance to do that."  (Pl. Brief p. 7 ;DEX 2 at 12).  Plaintiff provided evidence that Wofford testified that "if you can't observe an applicant's performance first hand, the next best thing is to talk to someone who has observed the applicant first hand."  Id. at 12-13.  Wofford concedes that knowing the performance of an applicant on a daily operational level is very important.  Id. at 37. Plaintiff provided evidence that Wofford admits he called on his personal observations as first line supervisor of the selectee in making his determination. However, Mr. Wofford did not contact Plaintiff McDaniel's first line supervisor, Jesse Vernado-White.

The Supreme Court's rejection of the "slap you in the face" standard is not a substantive change to the legal threshold required to prove pretext.  Instead, the Supreme Court's rejection of such language is based on the Supreme Court's belief that the language is unhelpful and imprecise as an elaboration of the standard for inferring pretext from superior qualifications.  Although the Supreme Court does not define more precisely what standard should govern pretext claims based on superior qualifications, the Supreme Court considered other standards favorably, including the standard established in Cooper.  In Cooper, the Eleventh Circuit noted that "disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the

20

candidate selected over the plaintiff for the job in question." 390 F.3d at 732; <u>see also</u> <u>Lee v. GTE Fla., Inc.</u>, 226 F.3d 1249, 1254 (11th Cir. 2004) (quoting <u>Deines v. Texas Dep't of Protective & Regulatory Servs.</u>, 164 F.3d 277, 280-81 (5th Cir.1999)) (internal quotation marks omitted).

Plaintiff McDaniel argues that "in determining whether pretext exists, the court should look to whether the employer applies its selection practices equally." <u>Gilchrist v. Bolger</u>, 733 F.2d 1551 (11th Cir. 1984).  Plaintiff believes that the fact that the selecting official contacted Mr. Rhodes, Plaintiff's second line supervisor, rather than Ms. White, Plaintiff's first line supervisor, to discuss Plaintiff's qualifications implies an intent to discriminate.  Courts are not in the business of adjudging whether employment decisions are prudent or fair, but instead the sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.  <u>Damon v. Fleming Supermarkets</u>, 196 F.3d 1354 (11th Cir. 1999); <u>See also</u> <u>Nix v. WLCY Radio/Rahall Communications</u>, 738 F.2d 1181, 1187 (11th Cir.1984).  Further, Title VII is not designed to make federal courts "'sit as a super-personnel department that reexamines an entity's business decisions.'" <u>Davis v. Town of Lake Park, Fla.</u> 245 F.3d 1232 (11th Cir. 2001);  <u>Elrod v. Sears, Roebuck & Co.</u>, 939 F.2d 1466, 1470 (11th Cir.1991).  The Court finds that the Defendant's decision to contact Mr. Rhodes, Plaintiff's second line supervisor,

rather than Ms. White, Plaintiff's first line supervisor, to discuss Plaintiff's qualifications while the Defendant relied on recommendations from the selectee's second line supervisor and Wofford's, the selecting official, knowledge as Mr. Murphree's former first line supervisor during the selection process does not imply an intent to discriminate.

In addition, the Court finds persuasive and binding the language in Cooper that "disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." 390 F.3d at 732. The Defendant has not presented sufficient evidence to establish that the disparities in Plaintiff McDaniel and Mr. Murphree's qualifications are of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen Mr. Murphree over Plaintiff McDaniel for the job in question. The Court determines that Plaintiff has not shown that the Defendant's legitimate and nondiscriminatory reasons are pretextual. Accordingly, the Defendant's motion for summary judgment as to Plaintiff McDaniel's race discrimination in promotions claim is due to be granted.

## V. Conclusion

For the reasons set forth above, the Defendant's motion for summary

judgment is due to be **Granted** as to all of Plaintiff's claims.

       **DONE** and **ORDERED** this 13th day of June, 2006.

**VIRGINIA EMERSON HOPKINS**
**United States District Judge**